O

FILED
CLERK, U.S. DISTRICT COURT

DEC - 8 2014

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA CARMEN RIVERA,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 13-9090 RNB<br><br>ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation.[1]

A. **Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination (Disputed Issue Two).**

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1    Disputed Issue Two is directed to the ALJ's adverse credibility determination. (See Jt Stip at 14-23.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton standard," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

Plaintiff testified that she cannot work because of knee problems, depression, vision problems, migraine headaches, and sleep problems. (See AR 87-88.) Plaintiff also testified that on account of her conditions, she cannot be responsible for other people and was limited to walking for 2-3 blocks at a time, standing for less than one hour at a time, sitting for one hour at a time, and lifting 10 pounds. (See AR 87, 89-90.)

In addition to providing testimony at the hearing, plaintiff completed a Function Report describing her activities and abilities. (See AR 263-70.) In the report, plaintiff stated that she performs personal care without assistance, prepares simple meals, does laundry, shops for groceries, and walks her dog. (See AR 263, 265, 266.)

The ALJ determined that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's

2

residual functional capacity ("RFC") assessment. (See AR 57.) As support for this adverse credibility determination, the ALJ stated four reasons. (See AR 57-58.) The Court finds that, although one of the ALJ's proffered reasons was legally insufficient to support his adverse credibility determination, the error was harmless because the other three reasons were legally sufficient.

One of the reasons stated by the ALJ was that plaintiff's treatment history undermined her allegations, specifically because the record contained no evidence that plaintiff underwent surgical procedures, physical therapy, or pain relief injections for her knee since the alleged onset date. (See AR 57-58.) The ALJ also found that plaintiff had no history of admission to a psychiatric unit and had not received psychotherapy, treatment, or other medical interventions in a mental health facility. (See AR 58.) However, the record reflects that plaintiff received multiple recommendations for knee surgery (see AR 386, 743); that she underwent physical therapy (see AR 374, 386); and that she received psychotherapy and psychiatric treatment (see AR 418, 430, 436, 440, 441, 444, 473, 480, 513, 518). Although the ALJ technically was correct in finding that plaintiff had not yet had surgery and that the record contained no evidence that plaintiff was admitted to a psychiatric unit or that plaintiff was treated in a mental health facility, the Court does not find this reason "clear and convincing" in light of the evidence that authorization for the knee surgery was pending (see AR 743) and the ample evidence of plaintiff's outpatient psychiatric treatment, including evidence that plaintiff had visited an emergency room for acute anxiety and had been prescribed the maximum dosage of an anti-depressant (see AR 421, 447). The Court therefore finds that, on the whole, this reason did not constitute a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.

Another reason for the ALJ's adverse credibility determination was that the record contained evidence that plaintiff "has failed to comply with prescribed treatment" by missing appointments and failing to take medication. (See AR 58; see

also AR 400, 629, 631, 665, 711, 788, 791, 800, 802, 803.) In general, an ALJ may not draw an adverse inference when a claimant fails to comply with treatment because of a mental illness. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the record does reflect that one of plaintiff's treating physicians observed that plaintiff would become more receptive to medical advice when her depression became better controlled and responded to plaintiff's non-compliance on one occasion with an "urgent" referral to a psychiatrist. (See AR 400, 802.) Nonetheless, the Court finds that the ALJ's interpretation of the evidence was rational because the evidence of plaintiff's non-compliance was ample and because the record does not clearly show that plaintiff's non-compliance always was beyond her control. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The Court therefore finds that this reason constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (upholding adverse credibility determination where the record was filled with evidence that claimant had improperly failed to obtain treatment); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ's adverse credibility determination may properly account for a claimant's unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment).[2]

---

[2] Plaintiff contends that it was improper for the ALJ to rely on her non-compliance without first finding that the treatment was clearly expected to restore capacity, as required by Social Security Ruling ("SSR") 82-59, 1982 WL 31384. (See Jt Stip at 17.) SSR 82-59 "delineates the circumstance in which the Commissioner can deny benefits on the basis that a claimant has failed to follow prescribed treatment." See Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995). "The procedures that SSR 82-59 mandates, however, only apply to claimants who would otherwise be disabled within the meaning of the Act." Id. Since the ALJ did not find
(continued...)

4

Another reason provided by the ALJ for his adverse credibility determination was that plaintiff's daily activities were "not consistent with the alleged degree of impairment" and tended "to show that she has the ability to perform work." (See AR 58.) In general, an ALJ may base an adverse credibility determination on evidence of a claimant's daily activities on two grounds: the stated activities contradict the claimant's other testimony, or they meet the threshold for transferable work skills. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Here, although it appears that the ALJ invoked both grounds, he specifically supported only the first ground by finding that plaintiff's testimony (particularly her testimony that she could walk only 2-3 blocks at a time) was contradicted by her stated activities, which included performing personal care without assistance, preparing simple meals, doing laundry, shopping for groceries, and walking her dog for 10 minutes. (See AR 58; see also AR 263, 265, 266, 629.) The Court finds that this reason also constitutes a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Molina, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported adverse credibility determination); Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (evidence that claimant exercised and undertook projects suggested

---

[2](...continued)
that plaintiff would otherwise be disabled by premising the denial of benefits solely on plaintiff's failure to follow prescribed treatment, plaintiff was not entitled to the protections of SSR 82-59. See id. (claimant had no right to enjoy protections of SSR 82-59 where she would not have otherwise been disabled because ALJ did not premise denial of her benefits solely on her failure to follow prescribed treatment).

that claimant's later claims about the severity of his limitations were exaggerated); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

Another reason for the ALJ's adverse credibility determination was that the "objective evidence does not support [plaintiff's] allegations." The ALJ specifically noted in this regard that the findings of the consultative examiners supported the ALJ's RFC assessment for medium work with limitations to simple to moderately complex work, no public contact, and occasional contact with peers. (See id.; see also AR 406, 413.) The Court finds that this reason also constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (ALJ properly considered conflict between claimant's testimony about knee pain and specific evidence in the record); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record).[3]

In sum, the Court finds that, even though the ALJ erred in relying on one of his four stated reasons in support of his adverse credibility determination, the error was harmless because the ALJ's other three reasons and ultimate adverse credibility determination were adequately supported by substantial evidence. See Carmickle v.

---

[3] Plaintiff contends that this reason was legally insufficient because an adverse credibility determination may not be based "solely" on the alleged lack of objective medical support. (See Jt Stip at 16.) Here, however, lack of objective medical support was not the sole basis for the ALJ's adverse credibility determination, but just one of multiple factors. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

6

Comm'r Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence).

### B. The ALJ failed to properly consider the treating physician's opinion (Disputed Issue One).

Disputed Issue One is directed to the ALJ's consideration of the opinion of Dr. Sobol, an orthopedic surgeon. (See Jt Stip at 4-14.) In May 2011, Dr. Sobol issued an opinion addressing plaintiff's left knee impairment. (See AR 384-98.) Dr. Sobol opined that plaintiff should avoid work requiring heavy lifting, avoid prolonged weight-bearing over five hours in an eight-hour workday, and avoid running, jumping, climbing, walking over uneven ground, squatting, kneeling, crouching, crawling, pivoting, or other activities of comparable physical effort. (See AR 396.)

As a preliminary matter, the Court rejects the Commissioner's contention that Dr. Sobol was not a treating physician because his purpose was to provide reports for plaintiff's worker's compensation case and because he only saw plaintiff for 30 minutes before issuing his May 2011 opinion. (See Jt Stip at 8-9.) An ALJ may not discount a medical report because of the purpose for which it was obtained, even if the purpose is worker's compensation litigation. See Lester, 81 F.3d at 832; Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Moreover, the record reflects that Dr. Sobol's contact with plaintiff well exceeded a 30 minute visit before he issued his May 2011 opinion: he first saw plaintiff in August 2010; prescribed multiple types of treatment, including various types of therapy, medication, and bracing; and referred her to other specialists. (See AR 374-75, 377, 386, 390.) Moreover, after he issued his May 2011 opinion, Dr. Sobol continued to treat plaintiff on numerous occasions in 2011 and 2012. (See AR 711-41.) The record also reflects that Dr. Sobol was designated as plaintiff's "primary treating physician" for purposes

of her worker's compensation case. (See AR 713, 721, 725.) This history amply evinced a treating medical relationship between plaintiff and Dr. Sobol. See 20 C.F.R. § 404.1502 (defining a treating source as a physician who has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant).

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

The ALJ declined to credit Dr. Sobol's May 2011 opinion for two reasons.

(See AR 54.)[4] First, the ALJ found that "Dr. Sobol did not review [plaintiff's] medical records from 2011 or 2012." (See AR 54.) To the contrary, the record reflects that Dr. Sobol did in fact review plaintiff's medical records from 2011 and 2012. (See AR 713-14, 732-34.) Moreover, plaintiff's later medical records evidenced that plaintiff's knee condition did not improve and arguably worsened. For example, another orthopedic surgeon recommended knee surgery in 2012. (See AR 743.) Accordingly, the Court finds that this first stated reason did not constitute a legally sufficient reason on which the ALJ could properly rely in support of his rejection of Dr. Sobol's opinion.

Second, the ALJ found that Dr. Sobol's findings "support the above limitations" for medium work. (See AR 54.) The ALJ specifically found that Dr. Sobol had noted that (1) a radiograph of plaintiff's left knee simply showed chondrocalcinosis and a slight decrease in medical joint compartment cartilage; and (2) plaintiff had intact sensation, a 4/5 on motor strength for her left knee, and intact reflexes with a slight limp to her gait. (See id.; see also AR 388.) However, the ALJ's limited findings did not accurately capture the overall diagnostic picture, which reflected that Dr. Sobol's May 2011 opinion was supported by his findings of paripatellar effusion; patellofemoral crepitus and pain with patellar compression and passive ranging; and diffuse left knee pain, absent a click. (See AR 387-88.) Moreover, after issuing the May 2011 opinion, Dr. Sobol found, for example, that plaintiff had "increased pain and disability consistent with a chronic sprain/strain and patellofemoral arthraligia," a "significant limp," and "increased left knee pain with associated mechanical complaints of locking, mistrust, and giving-way." (See AR 715, 723, 724-25.) And, as noted above, another orthopedic surgeon essentially corroborated Dr. Sobol's opinion by recommending knee surgery. (See AR 743.)

---

[4] The ALJ incorrectly dated Dr. Sobol's opinion to August 2010. (See AR 54; see also AR 384-98.)

9

Accordingly, the Court finds that this second reason also did not constitute a legally sufficient reason on which the ALJ could properly rely in support of his rejection of Dr. Sobol's opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (ALJ improperly rejected treating physician's opinion based on limited findings where the opinion was supported by the "context of the overall diagnostic picture" or the medical record on the whole) (citations omitted); Holohan v. Massanari, 246 F.3d 1195, 1205, 1207 (9th Cir. 2001) (ALJ failed to properly consider treating physician's opinion by relying on treatment notes selectively and by disregarding more recent evidence that claimant's impairments were quite severe).

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful that, in Garrison v. Colvin, 759 F.3d 995, 1019-21 (9th Cir. 2014), a Ninth Circuit panel held that where an ALJ failed to properly consider various types of evidence, it was appropriate to credit the evidence as true and remand the case for calculation and award of benefits. However, the Court also notes that after Garrison was decided, another Ninth Circuit panel did not apply or even acknowledge this "credit as true" rule where substantial evidence did not support an

1 | ALJ's rejection of treating medical opinions and his adverse credibility
2 | determination; instead, the panel simply remanded the case for further administrative
3 | proceedings. See Ghanim, 763 F.3d at 1167. In any event, to the extent that Garrison
4 | governs the Court's analysis, the Court finds it distinguishable, as discussed below.

5 | In Garrison, the Ninth Circuit held that the district court should remand to the
6 | Commissioner for an award of benefits if three conditions are met: (1) the record has
7 | been fully developed and further administrative proceedings would serve no useful
8 | purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting
9 | evidence, whether claimant testimony, physician's opinion, or opinion from an "other
10 | source"; and (3) if the improperly discredited evidence were credited as true, the ALJ
11 | would be required to find the claimant disabled on remand. See Garrison, 759 F.3d
12 | at 1020.

13 | Here, plaintiff contends that Dr. Sobol's May 2011 opinion, if credited,
14 | reflected an RFC for light work and therefore would direct a finding of disability
15 | under the Medical-Vocational Guidelines ("Grids"). (See Jt Stip at 7-8.) The Court
16 | disagrees. Nowhere in Dr. Sobol's May 2011 opinion is there a specific weight-
17 | bearing limitation consistent with an RFC for light work. Rather, the only evidence
18 | suggesting such a limitation was the testimony of the vocational expert, who
19 | effectively "translated" Dr. Sobol's opinion into an RFC for light work. (See Jt Stip
20 | at 7; see also AR 106-07, 109.) However, it was not the vocational expert's role to
21 | make such a determination, nor was she qualified to do so. See Sample v. Schweiker,
22 | 694 F.2d 639, 643-44 and n.6 (9th Cir. 1982) (noting that a vocational expert has
23 | neither the role nor qualifications "to determine the validity of the medical opinion
24 | offered"); see also Petrauskas v. Commissioner Social Sec. Admin., 414 Fed. Appx.
25 | 7, 9 (9th Cir. 2010) (now citable for its persuasive value per Ninth Circuit Rule 36-3)
26 | (noting that vocational experts "did not have the expertise to provide a medical
27 | opinion as to the severity of [claimant's] impairments").
28 | //

11

1  The Court therefore finds that remand for further proceedings is warranted here
2  because the vocational expert did not testify that a person could not work with the
3  limitations described by Dr. Sobol and consequently the third Garrison condition has
4  not been met.  See Harman v. Apfel, 211 F.3d at 1172, 1180 (9th Cir. 2000)
5  (remanding for further proceedings in part because the record contained no testimony
6  from the vocational expert that the limitations established by the improperly
7  discredited evidence would render claimant unable to engage in any work); see also
8  Strauss v. Commissioner of the Social Sec. Admin., 635 F.3d 1135, 1138 (9th Cir.
9  2011) (reversal for award of benefits is appropriate only where the record
10 demonstrates claimant is disabled within meaning of Social Security Act).

11  Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing
12 the decision of the Commissioner of Social Security and remanding this matter for
13 further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).[5]

15 DATED: December 8, 2014

*/s/ Robert N. Block*
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[5] It is not the Court's intent to limit the scope of the remand.